**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |  |
|---|---|---|
| **ROBERT L. WRIGHT, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. <u>3:20-cv-656</u>** |
| | ) | |
| **EQUIFAX INFORMATION SERVICES, LLC,** | ) | |
| **SERVE:   Corporation Service Company, Reg. Agent** | ) | |
| **100 Shockoe Slip** | ) | |
| **2nd Floor** | ) | |
| **Richmond, VA  23219** | ) | |
| | ) | |
| **EXPERIAN INFORMATION SOLUTIONS, INC.,** | ) | |
| **SERVE:   David N. Anthony, Reg. Agent** | ) | |
| **TROUTMAN SANDERS, LLP** | ) | |
| **1001 Haxall Point** | ) | |
| **Richmond, VA 23219** | ) | |
| | ) | |
| **TRANS UNION, LLC,** | ) | |
| **SERVE:   Corporation Service Company, Reg. Agent** | ) | |
| **100 Shockoe Slip** | ) | |
| **2nd Floor** | ) | |
| **Richmond, VA 23219** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **VIRGINIA CREDIT UNION, INC.,** | ) | |
| **SERVE:   Christopher M. Shockley, Reg. Agent** | ) | |
| **7500 Boulders View Drive** | ) | |
| **P.O. Box 90010** | ) | |
| **Richmond, VA 23225** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>COMPLAINT</u>

COMES NOW the Plaintiff, ROBERT L. WRIGHT, JR., by counsel, and for his

complaint against each of the Defendants, alleges as follows:

# I.

## PRELIMINARY STATEMENT

1.      Defendant EQUIFAX INFORMATION SERVICES, LLC, Defendant EXPERIAN INFORMATION SOLUTIONS, INC., Defendant TRANS UNION, LLC, and Defendant VIRGINIA CREDIT UNION, INC. have violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA"), by continuing to improperly report derogatory information regarding Plaintiff's mortgage as included or discharged in bankruptcy, Defendant EQUIFAX INFORMATION SERVICES, LLC, Defendant EXPERIAN INFORMATION SOLUTIONS, INC., and Defendant VIRGINIA CREDIT UNION, INC. continue to improperly report multiple trade lines reflecting unsecured debts owed to VIRGINIA CREDIT UNION, INC. as discharged in Plaintiff's bankruptcy case, and Defendant EQUIFAX INFORMATION SERVICES, LLC, and Defendant VIRGINIA CREDIT UNION, INC. continue to improperly report as discharged in bankruptcy an unsecured loan that was actually paid in full before Plaintiff commenced his bankruptcy proceedings.

2.      Despite receiving multiple disputes and correspondence from Plaintiff, Defendants continue to report this inaccurate and derogatory information on Plaintiff's credit.

3.      Defendants' violations include: failing to properly investigate Plaintiff's disputes and failing to maintain reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's credit files.  Through these failures, and by improperly reporting on Plaintiff's credit, Defendants have violated, and are continuing to violate, Plaintiff's rights under the FCRA.  Accordingly, Plaintiff seeks actual damages, attorney's fees and costs, and punitive damages for Defendants' willful violations of the FCRA.

## II.

### JURISDICTION AND VENUE

4.     The jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b)(1)-(2).

## III.

### PARTIES

6.     Plaintiff ROBERT L. WRIGHT, JR. ("Mr. Wright" or "Plaintiff") is a natural person and "consumer" as defined by § 1681a(c) of the FCRA. Mr. Wright resides in the County of King William, Virginia, which falls within the Richmond Division of the Eastern District of Virginia.

7.     Defendant EQUIFAX INFORMATION SERVICES, LLC ("Equifax") is a limited liability company formed in Georgia and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

8.     Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing to third parties information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

9.     Equifax disburses consumer reports to third parties, under contract, for monetary compensation.

10.     Defendant EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") is a corporation formed in Ohio and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

11.     Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing to third parties information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

12.     Experian disburses consumer reports to third parties, under contract, for monetary compensation.

13.     Defendant TRANS UNION, LLC ("Trans Union") is a limited liability company formed in Delaware and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

14.     Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing to third parties information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

15.     Trans Union disburses consumer reports to third parties, under contract, for monetary compensation.

16.     Defendant VIRGINIA CREDIT UNION, INC. ("VACU") is a corporation formed in the Commonwealth of Virginia and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia. VACU conducts business in the Commonwealth of Virginia, with consumers in Virginia.

17.     With respect to the accounts it reported on Plaintiff's credit, VACU is a "furnisher" as governed by the FCRA.

## IV.

## FACTS

**A.     Background**

18.     On or about May 23, 2008, Plaintiff executed a deed of trust (the "Deed of Trust"), which Deed of Trust was recorded in the land records of King William County, Virginia on May 29, 2008, and encumbers Plaintiff's real estate located in King William County, Virginia, commonly known as 86 Edge Hill Farms Drive, Aylett, VA  23009.

19.     The Deed of Trust secures payment of a promissory note executed by Plaintiff on May 23, 2008 in the principal amount of $127,000.00 and made payable to VACU (the "VACU Mortgage").

20.     Other than the VACU Mortgage, Plaintiff has not entered into or opened any other mortgage loan accounts with VACU.

21.     On or about February 18, 2010, Plaintiff opened one revolving credit card account with VACU (the "VACU Credit Card").

22.     On or about April 6, 2013, Plaintiff, jointly with his son, entered into an unsecured installment loan agreement with VACU, requiring repayment of a principal amount of $5,000.00 over a period 48 months (the "VACU Installment Loan").

23.     The VACU Installment Loan was paid in full and satisfied prior to July 23, 2014.

24.     On July 23, 2014, Plaintiff filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code in the Eastern District of Virginia, Richmond Division, case no. 14-33942-KLP. Relief was ordered.

25.     At the time of his bankruptcy filing, Plaintiff owed only two debts to VACU: the VACU Mortgage and the VACU Credit Card.

26.     Amongst the debts included in his bankruptcy schedules filed with the bankruptcy court on July 23, 2014, Plaintiff listed the VACU Mortgage in "Schedule D – Creditors Holding Secured Claims" and the VACU Credit Card in "Schedule F - Creditors Holding Unsecured Nonpriority Claims." Plaintiff did not schedule any other debts owed to VACU.

27.     On July 30, 2014, VACU filed a proof of claim, which the court designed as Claim no. 2-1 in Plaintiff's bankruptcy case, asserting a nonpriority unsecured claim in the amount of $14,667.40 based on the balance due on the VACU Credit Card.

28.     On September 19, 2014, VACU filed a proof of claim, which the court designed as Claim no. 3-1 in Plaintiff's bankruptcy case, asserting a secured claim in the amount of $115,188.02 based on the balance due on the VACU Mortgage. VACU's proof of claim 3-1 listed an arrearage amount of $0.00, which confirmed that payments on the VACU Mortgage were current as of the date of the bankruptcy filing.

29.     Other than the two debts set forth in proofs of claim nos. 2-1 and 3-1, VACU did not file any other proofs of claims or other documents in Plaintiff's case asserting that Plaintiff owed any other debts to VACU at the time of the bankruptcy filing. Notably, VACU did not file a proof of claim asserting amounts were owed on the VACU Installment Loan as of the date of the bankruptcy filing.

30.     On July 25, 2014, Plaintiff filed a Chapter 13 Plan and Related Motions (the "Plan"), the terms of which provided for Plaintiff to "cure and maintain" payments on the VACU Mortgage, in accordance with 11 U.S.C. § 1322(b)(5) ("[the plan may] . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due...").

31.     The Plan further provided for the pro rata payment of allowed non-priority unsecured claims from any distribution remaining after disbursement to allowed secured and priority claim holders. The Plan estimated that nonpriority unsecured creditors would receive a 5% dividend on amounts they claimed in the bankruptcy, with the remaining amount of the unsecured debts to be discharged. This category included the VACU Credit Card.

32.     On October 2, 2014, the bankruptcy court entered an order confirming the Plan.

33.     On August 24, 2017, the trustee of Plaintiff's Chapter 13 bankruptcy estate filed a report with the court, confirming Plaintiff had completed all payments required under the Plan.

34.     On October 5, 2017, the bankruptcy court entered a discharge in Plaintiff's bankruptcy case, pursuant to 11 U.S.C. § 1328 of the Bankruptcy Code (the "Discharge").

35.     The debts that Plaintiff set forth in his bankruptcy schedules as "nonpriority unsecured claims," including the VACU Credit Card, were included in the Discharge.

36.     Because the VACU Mortgage was provided for under the "cure and maintain" provision of the Bankruptcy Code, 11 U.S.C. § 1322(b)(5), Plaintiff's VACU Mortgage was specifically excepted from the Discharge, pursuant to 11 U.S.C. § 1328(a)(1).

37.     In March 2018, several months after the entry of his bankruptcy Discharge, Plaintiff sought to refinance the VACU Mortgage. Plaintiff utilized LendingTree.com to find the most favorable terms for a mortgage refinance.

38.     On or about March 21, 2018, in connection with Plaintiff's LendingTree.com credit application, Equifax, Experian, and Trans Union each furnished a consumer report concerning Plaintiff to Quicken Loans.

39.     After receiving the respective consumer reports concerning Plaintiff, Quicken Loans offered to extend credit to Plaintiff, but Plaintiff chose not to enter into a loan with

Quicken Loans under the terms offered. Upon information and belief, the refinancing terms Quicken Loans offered to Plaintiff were based in part on derogatory information appearing in Plaintiff's credit reports that Equifax, Experian, and Trans Union furnished to Quicken Loans.

40.     In or around May 2018, Plaintiff requested copies of his credit disclosures from Equifax, Experian and Trans Union. Plaintiff subsequently received a credit disclosure from Equifax dated May 12, 2018, a credit disclosure from Experian dated May 9, 2018, and a credit disclosure from Trans Union dated August 13, 2018 (collectively, the "2018 Disclosures").

41.     The 2018 Disclosures revealed that Equifax, Experian, and Trans Union were each reporting inaccurate derogatory information regarding several VACU accounts, including the VACU Mortgage, the VACU Credit Card, and the VACU Installment Loan. Specifically, even though VACU filed proofs of claims in Plaintiff's bankruptcy case for only the VACU Mortgage and the VACU Credit Card—and only the VACU Credit Card was actually discharged in Plaintiff's bankruptcy case—Equifax, Experian, and Trans Union were each reporting that four (4) separate VACU accounts were included in or otherwise affected by Plaintiff's bankruptcy. Furthermore, Equifax, Experian, and Trans Union were reporting two separate trade lines with inaccurate and derogatory information regarding VACU mortgage accounts, once as partial account no. 50002008 (the "1st VACU Mortgage Trade Line") and once as partial account no. 300007744 (the "2nd VACU Mortgage Trade Line"), even though Plaintiff had only the one VACU Mortgage with VACU. Additionally, on all three 2018 Disclosures, the VACU Installment Loan was inaccurately being reported as affected by Plaintiff's bankruptcy. Finally, Equifax, Experian, and Trans Union were each reporting derogatory information regarding two other VACU accounts, one identified as partial account no. 51996027, and the other identified as partial account no. 534466001027 (collectively, the "VACU Unsecured Accounts").

**B.      Inaccurate and Derogatory Reporting by Equifax.**

42.      In the 2018 Disclosures, Equifax reported inaccurate and derogatory information in both of the trade lines that referenced VACU mortgage accounts. With respect to the 1st VACU Mortgage Trade Line, Equifax reported an account status of "included in wage earner plan," a date of first delinquency and date major delinquency first reported of July 2014, and additional information referencing "bankruptcy chapter 13." With respect to the 2nd VACU Mortgage Trade Line, Equifax reported a date of last payment and date of last activity of November 2017, and it failed to report any payments made after November 2017 in the historical account information section.

43.      Equifax's reporting was inaccurate because Plaintiff has only one mortgage with VACU, so Equifax should not have reported information about two separate VACU mortgage accounts. Even if the two trade lines both refer to the same VACU Mortgage account, it was misleading to report differing and derogatory information about the VACU Mortgage under two separate trade lines. Furthermore, the derogatory information that Equifax reported in both trade lines was inaccurate because—contrary to the reporting in the 1st VACU Mortgage Trade Line— the VACU Mortgage was not included, discharged, or otherwise affected by Plaintiff's bankruptcy, and—despite the information Equifax reported in the 2nd VACU Mortgage Trade Line—Plaintiff timely made all monthly payments due on his VACU Mortgage before, during, and after his bankruptcy.

44.      In the 2018 Disclosures, Equifax also inaccurately reported derogatory information about Plaintiff's VACU Installment Loan, including a status of "included in wage earner plan," a date of first delinquency and date major delinquency first reported of July 2014, and additional information referencing "bankruptcy chapter 13."

45.     Equifax's reporting was inaccurate because Plaintiff paid the VACU Installment Loan in full prior to filing bankruptcy, and therefore, that account was not included in or otherwise affected by the bankruptcy.

46.     Finally, the 2018 Disclosures revealed that Equifax was reporting derogatory information in both of the trade lines referencing the VACU Unsecured Accounts. For both of the VACU Unsecured Accounts, Equifax reported a status of "included in wage earner plan," a date of first delinquency and date major delinquency first reported of July 2014, and additional information referencing "bankruptcy chapter 13."

47.     Equifax's reporting was inaccurate because only one of Plaintiff's VACU accounts—the VACU Credit Card—was discharged in Plaintiff's bankruptcy case. Even if the VACU Unsecured Accounts trade lines both refer to the same VACU Credit Card account, it was misleading and inaccurate to report derogatory information about the VACU Credit Card under two separate trade lines.

48.     On September 13, 2018, Plaintiff sent Equifax a letter dated September 12, 2018 via certified mail, to dispute the inaccurate and derogatory information set forth in the 2018 Credit Disclosure (the "First Equifax Dispute Letter").

49.     In the First Equifax Dispute Letter, Plaintiff disputed the inaccurate and derogatory information reported in the 1st and 2nd VACU Mortgage Trade Lines. Specifically, Plaintiff asserted that the 1st VACU Mortgage Trade Line, which inaccurately reflected the VACU Mortgage as being included in Plaintiff's bankruptcy, should be removed from his credit report. With respect to the 2nd VACU Mortgage Trade Line, Plaintiff disputed the inaccurate reporting of payments he made on the VACU Mortgage, and requested that the reporting be updated to accurately reflect all payments made on that account.

50.    On September 17, 2018, Equifax received Plaintiff's First Equifax Dispute Letter.

51.    In response to the First Equifax Dispute Letter, Equifax mailed to Plaintiff its reinvestigation results, dated September 26, 2018. In its September 26, 2018 reinvestigation results, Equifax failed to address or resolve the inaccurate information that Plaintiff disputed.

52.    First, Equifax did not delete or correct the reporting in the 1st VACU Mortgage Trade Line. Equifax indicated that the results of its research were as follows: "We verified that this item belongs to you. If you have additional questions about this item please contact: Virginia Credit Union Inc…."  The only update Equifax made to the information reported in the 1st VACU Mortgage Trade Line was the addition of a note to the "additional information" section of the trade line indicating, "Consumer Disputes – Reinvestigation in Process." Otherwise, the reporting of the 1st VACU Mortgage Trade Line remained unchanged. Equifax's reinvestigation results failed to address Plaintiff's dispute regarding the inaccurate reporting of his VACU Mortgage.

53.    Second, Equifax did not correct the information it was reporting in the 2nd VACU Mortgage Trade Line and, instead, began reporting additional incorrect information. Specifically, Equifax did not update any of its reporting of payments made on the loan, and it changed the balance reported on the VACU mortgage to $0. This reporting was inaccurate because the VACU Mortgage remained open with a balance owed.

54.    On November 30, 2018, Plaintiff sent Equifax a second letter, dated November 29, 2018, via certified mail to dispute the inaccurate and derogatory information appearing on his credit (the "Second Equifax Dispute Letter").

55.    In the Second Equifax Dispute Letter, Plaintiff again disputed Equifax's inaccurate and derogatory reporting of the two trade lines referencing VACU mortgage accounts.

Plaintiff enclosed documentation with the Second Equifax Dispute Letter, demonstrating that he had been making and was continuing to make timely monthly payments towards the VACU Mortgage. Plaintiff requested again that Equifax correct its reporting of the VACU Mortgage.

56.     On December 3, 2018, Equifax received Plaintiff's Second Equifax Dispute Letter.

57.     In response to the Second Equifax Dispute Letter, Equifax mailed to Plaintiff its reinvestigation results, dated December 8, 2018. In its December 8, 2018 reinvestigation results, Equifax failed to address or resolve the inaccurate information that Plaintiff disputed.

58.     First, Equifax did not make any adjustment to its reporting of the 1st VACU Mortgage Trade Line. Instead, Equifax again responded to Plaintiff's dispute by merely advising Plaintiff that "We verified that this item belongs to you. If you have additional questions about this item please contact: Virginia Credit Union Inc…." Equifax again failed to address Plaintiff's dispute regarding the inaccurate reporting of his VACU Mortgage.

59.     Second, with respect to the 2nd VACU Mortgage Trade Line, Equifax did update the balance and the date of last payment made, but Equifax continued to report an inaccurate date of last activity on the VACU Mortgage. Additionally, Equifax suppressed the reporting of the history of payments that Plaintiff made towards the VACU Mortgage, which it should not have done because the documentation Plaintiff provided demonstrated that those mortgage payments were made timely.

60.     On January 31, 2019, Plaintiff sent Equifax a third letter, dated January 28, 2019, via certified mail, to dispute the inaccurate and derogatory information appearing on his credit (the "Third Equifax Dispute Letter").

61.     In the Third Equifax Dispute Letter, Plaintiff again disputed Equifax's inaccurate and derogatory reporting in the two trade lines referencing VACU mortgage accounts. Plaintiff also disputed the inaccurate information Equifax reported in the VACU Unsecured Accounts trade lines. Specifically, Plaintiff asserted that, because only one VACU Credit Card was discharged in his bankruptcy case, Equifax should not be reporting more than one account as discharged in bankruptcy, and, accordingly, one of the two VACU Unsecured Accounts trade lines should be deleted. Next, Plaintiff disputed Equifax's reporting of the VACU Installment Loan as included in bankruptcy, advising Equifax that he paid the VACU Installment Loan in full prior to his bankruptcy filing, so that account was not included, discharged, or otherwise affected by Plaintiff's bankruptcy. Finally, Plaintiff disputed one of the prior addresses listed as his former residence in his credit file.

62.     On February 11, 2019, Equifax received Plaintiff's Third Equifax Dispute Letter.

63.     In response to the Third Equifax Dispute Letter, Equifax mailed to Plaintiff its reinvestigation results, dated March 7, 2019.

64.     In its March 7, 2019 reinvestigation results, Equifax did delete the street address that Plaintiff disputed, but Equifax failed to sufficiently update or resolve the other inaccurate information that Plaintiff disputed in his Third Equifax Dispute Letter.

65.     First, Equifax verified the inaccurate information reported regarding the 1st VACU Mortgage Trade Line, the VACU Installment Loan, and one of the two VACU Unsecured Accounts trade lines (partial account no. 534466001027), and Equifax made no corrections, changes or updates to its reporting of any of those items.

66.     Second, Equifax did not delete or correct its reporting of the other VACU Unsecured Accounts trade line (partial account no. 51996027). Instead, Equifax merely indicated

that it verified that this item belongs to Plaintiff and instructed Plaintiff to contact Virginia Credit Union Inc. with any additional questions. The only update Equifax made to the information reported was the addition of a note to the "additional information" section of the trade line indicating, "Consumer Disputes – Reinvestigation in Process." Otherwise, the reporting remained unchanged. As a result, Equifax continued to report derogatory information regarding both of the VACU Unsecured Accounts.

67.     Third, with respect to the 2nd VACU Mortgage Trade Line, Equifax did update the account balance, the date of last activity, and reported two payments made to the account. However, Equifax did not correct its reporting to include any prior payments that plaintiff made toward the VACU Mortgage.

68.     In or around January 2020, Plaintiff obtained an updated copy of his Equifax credit disclosure, dated January 21, 2020, which revealed that Equifax continued to report the inaccurate and derogatory information that Plaintiff previously disputed regarding the VACU Mortgage, the VACU Installment Loan, and both of the VACU Unsecured Accounts. Specifically, Equifax continued to report that four (4) trade lines related to VACU accounts (the 1st VACU Mortgage Trade Line, the VACU Installment Loan, and both of the VACU Unsecured Accounts) were included in or affected by Plaintiff's bankruptcy. Additionally, in the 2nd VACU Mortgage Trade Line, Equifax continued to inaccurately limit its reporting of payments Plaintiff had made on the VACU Mortgage to those made on or after December 2018.

69.     Equifax received all three dispute letters from Plaintiff, but in each case, Equifax wholly and entirely failed to conduct the reinvestigations required by law. Instead, Equifax merely "parroted" the inaccurate information dictated to it by VACU.

70.     Equifax had knowledge that it was reporting inaccurate information about several of Plaintiff's VACU accounts, but deliberately chose to ignore this knowledge, and instead chose to permit the inaccurate reporting on Plaintiff's credit.

71.     Upon information and belief, Equifax published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate and derogatory information about the accounts disputed by Plaintiff.

**C.     Inaccurate and Derogatory Reporting by Trans Union.**

72.     In the 2018 Disclosures, Trans Union reported inaccurate and derogatory information in both of the trade lines that referenced VACU mortgage accounts. With respect to the 1st VACU Mortgage Trade Line, Trans Union reported a pay status of "Account Included in Bankruptcy" and remarks of "Chapter 13 Bankruptcy," and Trans Union did not report the account balance or any payments made after February 2015. With respect to the 2nd VACU Mortgage Trade Line, Trans Union reported a date of last payment as November 1, 2017, and Trans Union failed to report any payments made in the account history section.

73.     Trans Union's reporting was inaccurate because Plaintiff has only one mortgage with VACU, so Trans Union should not have reported two separate VACU mortgage accounts. Even if the two trade lines both refer to the same VACU Mortgage account, it is misleading to report differing and derogatory information about the VACU Mortgage under two separate trade lines. Furthermore, the derogatory information that Trans Union reported in both trade lines was inaccurate because—contrary to the reporting in the 1st VACU Mortgage Trade Line—the VACU Mortgage was not included, discharged, or otherwise affected by Plaintiff's bankruptcy, and—despite the information reported in the 2nd VACU Mortgage Trade Line—Plaintiff timely

15

made all monthly payments due on his VACU Mortgage before, during, and after his

bankruptcy.

74.     In the 2018 Disclosures, Trans Union also inaccurately reported derogatory

information about Plaintiff's VACU Installment Loan, including remarks of "Chapter 13

Bankruptcy."

75.     Trans Union's reporting was inaccurate because Plaintiff paid the VACU

Installment Loan in full prior to filing bankruptcy, and therefore, it was not included in or

otherwise affected by the bankruptcy.

76.     Finally, the 2018 Disclosures revealed that Trans Union was reporting derogatory

information regarding both of the VACU Unsecured Accounts. For both of the VACU

Unsecured Accounts, Trans Union reported a pay status of "Account Included in Bankruptcy"

and remarks referencing "Chapter 13 Bankruptcy."

77.     Trans Union's reporting was inaccurate because only one of Plaintiff's VACU

accounts—the VACU Credit Card—was discharged in Plaintiff's bankruptcy case. Even if the

VACU Unsecured Accounts trade lines both refer to the same VACU Credit Card account, it was

misleading and inaccurate for Trans Union to report derogatory information about the VACU

Credit Card under two separate trade lines.

78.     On September 13, 2018, Plaintiff sent Trans Union a letter, dated September 12,

2018, via certified mail, to dispute the inaccurate and derogatory information set forth in the

2018 Disclosure (the "First Trans Union Dispute Letter").

79.     In the First Trans Union Dispute Letter, Plaintiff disputed the inaccurate and

derogatory information reported in the 1st and 2nd VACU Mortgage Trade Lines. Specifically,

Plaintiff asserted that the 1st VACU Mortgage Trade Line, which inaccurately reflected the

VACU Mortgage as being included in Plaintiff's bankruptcy, should be removed from his credit report. With respect to the 2nd VACU Mortgage Trade Line, Plaintiff disputed the inaccurate reporting of payments he made on the VACU Mortgage and requested that the reporting be updated to accurately reflect all payments made on that account.

80.     On September 17, 2018, Trans Union received Plaintiff's First Trans Union Dispute Letter.

81.     In response to the First Trans Union Dispute Letter, Trans Union mailed to Plaintiff its reinvestigation results, dated October 13, 2018. In its October 13, 2018 reinvestigation results, Trans Union correctly updated the information reported in the 2nd VACU Mortgage Trade Line. However, Trans Union did not delete or correct the reporting in the 1st VACU Mortgage Trade Line. Instead, Trans Union verified the information it was reporting as accurate, and made no changes to its reporting of the 1st VACU Mortgage Trade Line, thus failing to address Plaintiff's dispute regarding the inaccurate reporting of his VACU Mortgage.

82.     On November 30, 2018, Plaintiff sent Trans Union a second letter, dated November 29, 2018, via certified mail, to dispute the inaccurate and derogatory information appearing on his credit (the "Second Trans Union Dispute Letter").

83.     In the Second Trans Union Dispute Letter, Plaintiff again disputed the inaccurate and derogatory information reported in the 1st VACU Mortgage Trade Line, and Plaintiff requested again that Trans Union correct its reporting of the VACU Mortgage.

84.     On December 4, 2018, Trans Union received Plaintiff's Second Trans Union Dispute Letter.

85.     In response to the Second Trans Union Dispute Letter, Trans Union mailed to Plaintiff its reinvestigation results, dated December 29, 2018.

86.     In its December 29, 2018 reinvestigation results, Trans Union again verified the information it was reporting in the 1st VACU Mortgage Trade Line as accurate, and made no changes to its reporting, thus failing again to address Plaintiff's dispute regarding its inaccurate reporting of the VACU Mortgage.

87.     On January 31, 2019, Plaintiff sent Trans Union a third letter, dated January 28, 2019, via certified mail, to dispute the inaccurate and derogatory information Trans Union was reporting on his credit (the "Third Trans Union Dispute Letter").

88.     In the Third Trans Union Dispute Letter, Plaintiff again disputed the inaccurate and derogatory information reported in the 1st VACU Mortgage Trade Line, and Plaintiff requested again that Trans Union correct its reporting of the VACU Mortgage.

89.     On February 2, 2019, Trans Union received Plaintiff's Third Trans Union Dispute Letter.

90.     In response to the Third Trans Union Dispute Letter, Trans Union mailed to Plaintiff its reinvestigation results, dated February 12, 2019.

91.     In its February 12, 2019 reinvestigation results, Trans Union did not delete or correct its reporting of the 1st VACU Mortgage Trade Line. Instead, Trans Union merely indicated again that it verified the information it was reporting as accurate. Trans Union also updated the remarks section of the trade line with additional inaccurate information, changing the notation of "Chapter 13 Bankruptcy" to "Chapter 7 Bankruptcy," even though Plaintiff has never filed nor been a debtor in a Chapter 7 bankruptcy.

92.     In or around January 2020, Plaintiff obtained an updated copy of his Trans Union credit disclosure, dated January 22, 2020, which revealed that Trans Union continued to report the same inaccurate and derogatory information that Plaintiff previously disputed regarding the

VACU Mortgage. Additionally, Trans Union continued to report a total of four (4) trade lines that reflected VACU accounts (including the 1ˢᵗ VACU Mortgage Trade Line) as included in or affected by Plaintiff's bankruptcy.

93.     Trans Union received three dispute letters from Plaintiff, but in each case, failed to conduct the reinvestigations required by law. Instead, Trans Union merely "parroted" inaccurate information dictated to it by VACU.

94.     Trans Union had knowledge that it was reporting inaccurate information about Plaintiff's VACU Mortgage, but it deliberately chose to ignore this knowledge, and instead chose to permit the inaccurate reporting on Plaintiff's credit.

95.     Upon information and belief, Trans Union published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate and derogatory information disputed by Plaintiff.

**D.     Inaccurate and Derogatory Reporting by Experian.**

96.     In the 2018 Disclosures, Experian reported inaccurate and derogatory information in both of the trade lines that referenced VACU mortgage accounts. With respect to the 1ˢᵗ VACU Mortgage Trade Line, Experian reported a status of "Discharged through Bankruptcy Chapter 13/Never Late," no account balance, and a payment history that reflected no payments made on the account after December 2014." With respect to the 2ⁿᵈ VACU Mortgage Trade Line, Experian reported an account status date of November 2017, and only one payment made (November 2017) in the payment history section.

97.     Experian's reporting was inaccurate because Plaintiff has only one mortgage with VACU, so Experian should not have reported two separate VACU mortgage accounts. Even if the two trade lines both refer to the same VACU Mortgage account, it is misleading to report

differing or derogatory information about the VACU Mortgage under two separate trade lines. Furthermore, the information that Experian reported in both trade lines was inaccurate because—contrary to the reporting in the 1st VACU Mortgage Trade Line—the VACU Mortgage was not included, discharged, or otherwise affected by Plaintiff's bankruptcy, and—despite the information reported in the 2nd VACU Mortgage Trade Line—Plaintiff timely made all monthly payments due on his VACU Mortgage before, during, and after his bankruptcy.

98.     In the 2018 Disclosures, Experian also inaccurately reported derogatory information about Plaintiff's VACU Installment Loan, including a status of "Discharged through Bankruptcy Chapter 13/Never Late."

99.     Experian's reporting was inaccurate because Plaintiff paid the VACU Installment Loan in full prior to filing bankruptcy, and therefore, that account was not included in or otherwise affected by the bankruptcy.

100.     Finally, the 2018 Disclosures revealed that Experian was reporting derogatory information regarding both of the VACU Unsecured Accounts. For both of the VACU Unsecured Accounts, Experian reported a status of "Discharged through Bankruptcy Chapter 13."

101.     Experian's reporting was inaccurate because only one of Plaintiff's VACU accounts—the VACU Credit Card—was discharged in Plaintiff's bankruptcy case. Even if the VACU Unsecured Accounts trade lines both refer to the same VACU Credit Card account, it was misleading and inaccurate for Experian to report derogatory information about the VACU Credit Card under two separate trade lines.

102.     In or around January 2020, Plaintiff obtained an updated copy of his Experian credit disclosure, dated January 21, 2020, which revealed that Experian accurately updated its

reporting of the VACU Mortgage in the 2nd VACU Mortgage Trade Line, but Experian

continued to report inaccurate and derogatory information regarding the 1st VACU Mortgage

Trade Line, the VACU Installment Loan, and the two VACU Unsecured Accounts. With respect

to the 1st VACU Mortgage Trade Line, Experian was reporting a status of "Petition for Chapter

13 Bankruptcy," no account balance, and a payment history that reflected no payments made on

the account after June 2014." With respect to the VACU Installment Loan and the two VACU

Unsecured Accounts, Experian continued to report the same derogatory information that it had

reported on Plaintiff's 2018 Disclosure.

103.    On January 16, 2020, Plaintiff sent Experian a letter dated January 16, 2020, via

certified mail, to dispute the inaccurate and derogatory information appearing on Plaintiff's

credit file (the "First Experian Dispute Letter").

104.    In the First Experian Dispute Letter, Plaintiff disputed the inaccurate and

derogatory information Experian reported in the 1st VACU Mortgage Trade Line. Specifically,

Plaintiff asserted that the 1st VACU Mortgage Trade Line should be corrected or removed from

his credit report because he did not have a mortgage with VACU that was included in or affected

by his bankruptcy. Plaintiff also disputed the inaccurate information Experian reported in the

VACU Unsecured Accounts trade lines, asserting that Experian should delete one of those

accounts because only one VACU account was discharged in Plaintiff's bankruptcy. Finally,

Plaintiff disputed Experian's reporting of the VACU Installment Loan as included in bankruptcy,

advising Experian that he had paid the VACU Installment Loan in full prior to filing bankruptcy,

so that account was not included, discharged, or otherwise affected by his bankruptcy.

105.    On January 23, 2020, Experian received Plaintiff's First Experian Dispute Letter.

106.    In response to the First Experian Dispute Letter, Experian mailed to Plaintiff its reinvestigation results, dated February 18, 2020. In its February 18, 2020 reinvestigation results, Experian correctly updated the information it was reporting regarding the VACU Installment Loan, but Experian failed to address, resolve, or make any changes to the inaccurate information that Plaintiff disputed regarding the 1st VACU Mortgage Trade Line and the two VACU Unsecured Accounts. For each of these accounts, Experian's reinvestigation results stated, "[t]he company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute."

107.    On March 5, 2020, Plaintiff sent Experian a second letter, dated March 5, 2020, via certified mail, to dispute the inaccurate and derogatory information appearing on his credit (the "Second Experian Dispute Letter").

108.    In the Second Experian Dispute Letter, Plaintiff again disputed Experian's inaccurate and derogatory reporting in the 1st VACU Mortgage Trade Line and its reporting of the two VACU Unsecured Accounts. Plaintiff enclosed additional documentation with the Second Experian Dispute Letter, demonstrating that none of the disputed accounts was included or discharged in his bankruptcy case. Plaintiff requested again that Experian correct its reporting of these accounts.

109.    On March 11, 2020, Experian received Plaintiff's Second Experian Dispute Letter.

110.    In response to the Second Experian Dispute Letter, Experian mailed to Plaintiff a letter, dated March 21, 2020, in which Experian advised Plaintiff that it would not reinvestigate Plaintiff's dispute again.

22

111.    Experian received both of Plaintiff's two dispute letters, but in each case, Experian failed to conduct the reinvestigations required by law. Instead, Experian merely "parroted" the inaccurate information dictated to it by VACU regarding the VACU Mortgage and the two VACU Unsecured Accounts, and then refused to investigate further, even after Plaintiff provided additional documentation to support his assertions.

112.    Experian had knowledge that it was reporting inaccurate information about Plaintiff's VACU accounts, but deliberately chose to ignore this knowledge, and instead chose to permit the inaccurate reporting on Plaintiff's credit.

113.    Upon information and belief, Experian published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate and derogatory information about the VACU accounts disputed by Plaintiff.

**E.    Inaccurate and Derogatory Reporting by VACU**

114.    On January 31, 2019, the same day Plaintiff mailed the Third Equifax Dispute Letter and the Third Trans Union Dispute Letter, Plaintiff also sent  VACU a letter, dated January 28, 2019, via certified mail, to request that VACU correct the inaccurate and derogatory information being reported on Plaintiff's credit (the "VACU Dispute Letter").

115.    In the VACU Dispute Letter, Plaintiff advised VACU of the inaccurate and derogatory information that it was reporting on his credit regarding the 1st VACU Mortgage Trade Line, the 2nd VACU Mortgage Trade Line, the two VACU Unsecured Loans, and the VACU Installment Loan, and Plaintiff requested that VACU correct all of the inaccurate information being reported about the VACU accounts.

116.    On February 5, 2019, VACU received Plaintiff's VACU Dispute Letter.

117.    In or around March 2019, Plaintiff received a letter from VACU acknowledging receipt of the VACU Dispute Letter.

118.    Upon information and belief, after receipt of the each of the respective dispute letters, Equifax, Experian, and Trans Union all forwarded Plaintiff's disputes to VACU.

119.    Upon information and belief, VACU utilized the e-OSCAR automated system ("e-OSCAR") and the use of Automated Consumer Dispute Verification ("ACDV") procedures to process Plaintiff's disputes.

120.    Upon information and belief, in addition to receiving the VACU Dispute Letter directly from Plaintiff, VACU was also provided notice of all of Plaintiff's disputes to Equifax, Experian, and Trans Union, and, despite receiving these notices, failed and refused to investigate and correct its inaccurate reporting.

121.    VACU was aware of the correct way to report the each of Plaintiff's VACU accounts on Plaintiff's credit following the completion of his Plan and entry of his Discharge in the bankruptcy case.

122.    Over twenty years ago, the Consumer Data Industry Association (the "CDIA") created a standardized, electronic format named "Metro 2," for furnishers of information (like VACU) to use in reporting to the Nationwide Consumer Reporting Agencies (the "CRA's," which include Equifax, Experian, and Trans Union).[1] Furnishers receive training on how to properly implement the Metro 2 standards, which are laid out in the CDIA's Credit Reporting Resource Guide.

---

[1] CFPB, KEY DIMENSIONS & PROCESSES IN THE U.S. CREDIT REPORTING SYSTEM (Dec. 2012), *available at* http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf.

123.    According to the standards in the Credit Reporting Resource Guide, upon Plaintiff's successful completion of his Plan payments, with regard to the VACU Mortgage, VACU should have removed the previously reported "Bankruptcy Indicators," reported account statuses of "current," updated the "current balance" fields to reflect the outstanding balances of the loans, updated the "scheduled monthly payment amount" field to reflect the contractual monthly payment amounts, shown no amount as past due, and updated the "date of account information."[2]

124.    One month following Plaintiff's completion of his Plan payments, VACU should have started reporting the accurate account status, balance, and payment histories on any trade line(s) referencing the VACU Mortgage.

125.    Also according to the standards in the Credit Reporting Resource Guide, upon Plaintiff's successful completion of his Plan payments, VACU should have started reporting *only* those accounts actually included or discharged in bankruptcy as "Discharged/completed through BK Chapter 13", and then discontinued reporting the accounts.[3]

126.    VACU chose to not report information on Plaintiff's credit according to the standards laid out in the Credit Reporting Resource Guide. Instead, VACU chose to report inaccurate information on Plaintiff's credit, indicating that several VACU accounts (that were *not* actually discharged in bankruptcy) were included, discharged, or otherwise affected by Plaintiff's bankruptcy.

127.    On or about April 3, 2019, Plaintiff applied for credit with Capital One. Upon information and belief, in connection with Plaintiff's April 2019 credit application, Equifax,

---

[2] Consumer Data Industry Association, Credit Reporting Resource Guide 6-22 (2016).
[3] *Id.*

Experian, and Trans Union furnished to Capital One a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

128.    On or about November 23, 2019, Plaintiff applied for credit with Capital One. Upon information and belief, in connection with Plaintiff's November 2019 credit application, Equifax, Experian, and Trans Union furnished to Capital One a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

129.    On or about December 4, 2019, Plaintiff applied for credit with Bank of America. Plaintiff's application was denied. Upon information and belief, Bank of America relied upon information provided by Experian in making its decision to deny the extension of credit to Plaintiff.

130.    In or around February 2020, Plaintiff applied for credit, in the form of a Kohl's card, with Capital One. Upon information and belief, in connection with Plaintiff's February 2020 credit application, Equifax, Experian, and Trans Union furnished to Capital One a consumer report that contained inaccurate and derogatory information concerning Plaintiff.

131.    Through their violations of Plaintiff's rights under the FCRA, Equifax, Experian, Trans Union, and VACU have all caused damage to Plaintiff and continue to damage Plaintiff.

**V.**

**CLAIMS FOR RELIEF**

**COUNT ONE:**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b) (EQUIFAX, EXPERIAN, AND TRANS UNION)**

132.    Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

133.     Equifax, Experian, and Trans Union each violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they each furnished and maintained concerning Plaintiff.

134.     As a result of Equifax, Experian, and Trans Union's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

135.     The violations by Equifax, Experian, and Trans Union were willful, rendering Equifax, Experian, and Trans Union liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

136.     Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from Equifax, Experian, and Trans Union in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT TWO:
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a) (EQUIFAX, EXPERIAN, AND TRANS UNION)

137.     Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

138.     After Plaintiff disputed the inaccurate information on his respective credit reports, Equifax, Experian, and Trans Union each violated 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file.

139.     After Plaintiff disputed the inaccurate information, Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

140.     After Plaintiff disputed the inaccurate information, Equifax, Experian, and Trans Union violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the items of information upon a lawful reinvestigation.

141.     As a result of Equifax, Experian, and Trans Union's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

142.     The violations by Equifax, Experian, and Trans Union were willful, rendering Equifax, Experian, and Trans Union liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative Equifax, Experian, and Trans Union were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

143.     Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### COUNT THREE:
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b)(1) (VACU)

144.     Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

145.    On one or more occasions within the past two years, by example only and without limitation, VACU violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

146.    VACU understood the nature of Plaintiff's disputes when it received them from Equifax, Experian, and Trans Union.

147.    On one or more occasions within the past two years, by example only and without limitation, VACU violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax, Experian, and Trans Union.

148.    On one or more occasions within the past two years, by example only and without limitation, VACU violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(1)(E), by failing to modify the representations about several VACU accounts within Plaintiff's credit files with Equifax, Experian, and Trans Union to properly reflect the status of Plaintiff's VACU Mortgage and to remove references to Plaintiff's bankruptcy from VACU accounts that were not included or affected by Plaintiff's bankruptcy.

149.    The law in this District, the Fourth Circuit, and even nationally was long ago articulated to require a detailed and searching reinvestigation by a creditor when it receives a consumer's FCRA dispute through a CRA. See *Johnson v. MBNA*, 357 F.3d 426 (4th Cir. 2004).

150.    VACU was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Plaintiff's disputes.

151.    VACU has been sued numerous times for its alleged failures to conduct lawful FCRA reinvestigations.

152. Upon information and belief, the procedures that VACU's employee(s) or agent(s) followed regarding Plaintiff's FCRA disputes through e-Oscar were the procedures that VACU intended its employees or agents to follow.

153. Upon information and belief, VACU's employee(s) or agent(s) did not make a mistake in the way in which they followed VACU's procedures when they received, processed and responded to the respective ACDV's from Equifax, Experian, and Trans Union.

154. As a result of VACU's violations of 15 U.S.C. § 1681s-2(b)(1), Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

155. The violations by VACU were willful, rendering VACU liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, VACU was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

156. Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from VACU in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n and § 1681o.

## VI.

### DEMAND FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1) Award Plaintiff actual and punitive damages for violations of the FCRA by Equifax, Experian, Trans Union, and VACU;

(2) Award Plaintiff attorney's fees and costs under the FCRA;

(3) Award Plaintiff pre-judgment and post-judgment interest at the legal rate; and

(4) Award other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**.

**ROBERT L. WRIGHT, JR.**

By:

/s/ Mark C. Leffler
Emily Connor Kennedy, VSB# 83889
Mark C. Leffler, VSB# 40712
Stephen F. Relyea, VSB# 77236
Boleman Law Firm, P.C.
2104 W. Laburnum Ave, Suite 201
Richmond, VA 23227
(804) 358-9900 – Telephone
(804) 358-8704 – Facsimile
Email: eckennedy@bolemanlaw.com
Email: mcleffler@bolemanlaw.com
Email: sfrelyea@bolemanlaw.com

*Counsel for Plaintiff*